IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

JAMES E. COOKE, JR., :
:
    Plaintiff, :
:
v. : Civ. No. 10-893-LPS
:
AARON GOLDSTEIN, et al., :
:
    Defendants. :

James E. Cooke, Jr., Howard R. Young Correctional Institution, Wilmington, Delaware, Pro Se Plaintiff.

Ryan Patrick Connell, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Counsel for Defendants Aaron Goldstein, Joseph R. Biden, III, Carl C. Danberg, Phil Morgan, Lt. Williams, and Patrick B. Schwartz.

**MEMORANDUM OPINION**

May 26, 2011
Wilmington, Delaware

*signature*

**STARK, U.S. District Judge:**

## I. INTRODUCTION

Plaintiff James E. Cooke, Jr. ("Plaintiff"), filed this action pursuant to 42 U.S.C. § 1983 alleging violations of his constitutional rights.[1] Plaintiff, a pretrial detainee, is currently housed at the Howard R. Young Correctional Institution ("HRYCI") in Wilmington, Delaware. Plaintiff appears *pro se* and has been granted leave to proceed *in forma pauperis*. (D.I. 6) The Court proceeds to review and screen the Complaint pursuant to 28 U.S.C. § 1915 and § 1915A.[2]

## II. BACKGROUND

Plaintiff is housed at the HRYCI, awaiting retrial of criminal charges, following the reversal of his conviction for rape in the first degree, burglary in the first degree, arson in the first degree, two counts of murder in the first degree, and the resultant death sentence. *Cooke v. State*, 977 A.2d 803 (Del. 2009).

Plaintiff raises numerous claims commencing upon his arrival at the HRYCI on April 22, 2010, including his placement in "the hole," excessive force, medical needs, the grievance procedure, threats by prison personnel, transfer to a different correctional facility, denial of access to the courts, denial of due process, and opening of his legal mail. He seeks compensatory damages.

---

[1] Pursuant to 42 U.S.C. § 1983, a plaintiff must allege that some person has deprived him of a federal right, and that the person who caused the deprivation acted under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

[2] The Complaint named an additional plaintiff, Richard Iverson ("Iverson"). Because Cooke's and Iverson's claims were unrelated, a new case was opened for Iverson. The Court does not consider, and strikes, Iverson's allegations found at paragraph V.3. of the Complaint. (D.I. 2)

1

## III. **LEGAL STANDARDS**

This Court must dismiss, at the earliest practicable time, certain *in forma pauperis* and prisoner actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2) (*in forma pauperis* actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions). The Court must accept all factual allegations in a complaint as true and take them in the light most favorable to a *pro se* plaintiff. *See Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Because Plaintiff proceeds *pro se*, his pleading is liberally construed and his Complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94 (internal quotation marks omitted).

An action is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Under 28 U.S.C. § 1915(e)(2)(B)(i), a court may dismiss a complaint as frivolous if it is "based on an indisputably meritless legal theory" or a "clearly baseless" or "fantastic or delusional" factual scenario. *Neitzke*, 490 at 327-28; *Wilson v. Rackmill*, 878 F.2d 772, 774 (3d Cir. 1989; *see also Deutsch v. United States*, 67 F.3d 1080, 1091-92 (3d Cir. 1995) (holding frivolous a suit alleging that prison officials took inmate's pen and refused to give it back).

The legal standard for dismissing a complaint for failure to state a claim pursuant to § 1915(e)(2)(B)(ii) is identical to the legal standard used when ruling on Rule 12(b)(6) motions. *See Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999). However, before dismissing a

complaint or claims for failure to state a claim upon which relief may be granted pursuant to the screening provisions of 28 U.S.C. § 1915, the Court must grant Plaintiff leave to amend his complaint, unless amendment would be inequitable or futile. *See Grayson v. Mayview State Hosp.*, 293 F .3d 103, 114 (3d Cir. 2002).

A well-pleaded complaint must contain more than mere labels and conclusions. *See Ashcroft v. Iqbal*, ___U.S.___, 129 S.Ct. 1937 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). The assumption of truth is inapplicable to legal conclusions or to "[t]hreadbare recitals of the elements of a cause of action supported by mere conclusory statements." *Iqbal*, 129 S.Ct. at 1949. When determining whether dismissal is appropriate, the Court conducts a two-part analysis. *See Fowler v. UPMC Shadyside*, 578 F.3d 203,210 (3d Cir. 2009). First, the factual and legal elements of a claim are separated. *See id.* The Court must accept all of the Complaint's well-pleaded facts as true, but may disregard any legal conclusions. *See id.* at 210-11.

Second, the Court must determine whether the facts alleged in the Complaint are sufficient to show that has a "plausible claim for relief." *Id.* at 211. In other words, the Complaint must do more than allege Plaintiff's entitlement to relief; rather, it must "show" such an entitlement with its facts. *Id.* A claim is facially plausible when its factual content allows the Court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *See Iqbal*, 129 S.Ct. at 1949. The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

## IV. DISCUSSION

### A. Personal Involvement

Plaintiff names as Defendants Joseph R. Biden, III ("Biden"), Carl C. Danberg ("Danberg"), Carol Jefferson ("Jefferson"), Mr. Crawfford ("Crawfford"), Rodderick L. Johnson ("Johnson"),[3] Richard J. Morse ("Morse"), Steve Eichel ("Eichel"), Melissa Lang ("Lang"), Mr. Shea ("Shea"), and Patrick B. Schwartz ("Schwartz"). The Complaint, however, contains no allegations against any of these Defendants, and Plaintiff provides no facts to support a claim against them. "A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *Sutton v. Rasheed*, 323 F.3d 236, 249 (3d Cir. 2003) (internal quotation marks omitted). Hence, the claims against these Defendants lack an arguable basis in law or in fact and will be dismissed as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(b) and § 1915A(b)(1).[4]

### B. State Actor

Paragraphs 7 and 13 consist of claims against private defense attorneys Jennifer K. Aaronson ("Aaronson")[5] and Patrick Collins ("Collins"). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege "the violation of a right secured by the Constitution or laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). To act under "color of state law," a defendant must be "clothed with the authority of state law." *Id.* at 49. Aaronson and Collins are private criminal defense attorneys representing Plaintiff in his criminal case and are

---

[3]Misspelled on the court docket as Jjaison.

[4]Additionally, Morse, Eichel, Lang, and Shea are not State actors.

[5]Misspelled on the court docket as Aarowson.

4

not "clothed with the authority of state law." *Reichley v. Pennsylvania Dep't of Agric.,* 427 F.3d 236, 244-45 (3d Cir. 2005); *see also Biener v. Calio,* 361 F.3d 206, 216-17 (3d Cir. 2004). Accordingly, Plaintiff's § 1983 claims against Aaronson and Collins have no arguable basis in law or in fact and will be dismissed as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915(A)(b)(1).

### C. **Prosecutorial Immunity**

Paragraphs 1 and 13 refer to Aaron Goldstein ("Goldstein"), a prosecutor and Deputy Attorney General for the Delaware Department of Justice. Plaintiff alleges that Goldstein gave Defendant Warden Phil Morgan ("Morgan") an order that classified his placement in "the hole" with "denial of access." (D.I. 2 at ¶ 1) Paragraph 13 alleges that Plaintiff's defense counsel discussed with Goldstein the issue of the confiscation of Plaintiff's legal materials and his transfer to the James T. Vaughn Correctional Center ("VCC") in Smyrna, Delaware.

It is well established that a state prosecuting attorney is absolutely immune from liability pursuant to 42 U.S.C. § 1983 when the prosecutor's actions are related to the initiation and prosecution of a criminal action. *See Imbler v. Pachtman,* 424 U.S. 409, 431 (1976). The immunity extends to responsibilities discharged in court, such as the presentation of evidence or legal argument, as well as selected out-of-court behavior "intimately associated with the judicial phases" of litigation. "[T]he duties of the prosecutor in his role as advocate for the State involve actions preliminary to the initiation of prosecution and actions apart from the courtroom." *Id.* at 431 n.33.

Courts confronted with claims challenging a prosecutor's actions must utilize a functional analysis to determine whether or not the prosecutor acted within his or her "judicial capacity"

when attempting to apply absolute immunity. *See Odd v. Malone*, 538 F.3d 202, 207 (3d Cir. 2008). Under the functional approach, a prosecutor enjoys absolute immunity for actions performed in a judicial or "quasi-judicial" capacity. *Id.* Therefore, absolute immunity "attaches to actions intimately associated with the judicial phases of litigation, but not to administrative or investigatory actions unrelated to initiating and conducting judicial proceedings." *Id.* (internal citations omitted). Further, actions that relate to the prosecutor's role as an advocate are "judicial" actions. *See Mancini v. Lester*, 630 F.2d 990, 993 (3d Cir. 1980).

Here, Plaintiff alleges that Goldstein delivered a court order to Phelps. This act could be construed as one requiring advocacy on the part of Goldstein and, therefore, within the realm of prosecutorial functions. Even if it is not, the allegation does not rise to the level of a constitutional violation. Similarly, the remaining allegations regarding the confiscation and return of legal material and institutional transfer did not violate Plaintiff's constitutional rights. The claims are frivolous and will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

### D. Excessive Force

Plaintiff is a pretrial detainee awaiting retrial on a capital charge. He was placed in "the hole" upon his arrival at the HYRCI and wanted to be moved. According to the Complaint, on May 21, 2010, Plaintiff was kicking his cell door in an effort to speak to correctional officers about a transfer. He stopped kicking when Defendants G. Smith ("Smith") and A. Harris ("Harris") approached the cell. As Plaintiff was speaking to Defendants Mr. Searles ("Searles")

and Smith, upon Searles' order, Harris grabbed Plaintiff's genitalia and maced him.[6] Next, Plaintiff showed Defendant C/O Medine blood in his boxers and spoke to Defendant Lt. Williams ("Williams") about the incident. While speaking to Williams, Harris threatened to kill Plaintiff. (D.I. 2 at ¶ 3)

Plaintiff complains of a second incident on May 22, 2010, when Williams made contact with Plaintiff. Williams hit Plaintiff's chest with his shoulders and told Plaintiff that he would "kill him." (*Id.* at ¶ 5) Defendant C/O Marty ("Marty") was on the unit when the incident took place and Plaintiff reported the matter to Sgt. Charles ("Charles"). (*Id.*)

Excessive force claims for pretrial detainees are analyzed under the Fourteenth Amendment. *See Fuentes v. Wagner*, 206 F.3d 335 (3d Cir. 2000); *see also Sylvester v. City of Newark*, 120 F. App'x 419, 423 (3d Cir. Jan. 14, 2005) (not published). *Fuentes* instructs that "when a court is called upon to examine the amount of force used on a pretrial detainee for the purpose of institutional security, the appropriate analysis is . . . whether the measure taken inflicted unnecessary and wanton pain and suffering[, which] depends on whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm." *Fuentes*, 206 F.3d at 347 (internal quotation marks omitted). Accordingly, the Eighth Amendment cruel and unusual punishments standards found in *Whitley v. Albers*, 475 U.S. 312 (1986) and *Hudson v. McMillian*, 503 U.S. 1 (1992), apply to a pretrial detainee's excessive force claim arising in the context of a prison disturbance.[7] *Id.* Prison

---

[6]Searles told Plaintiff that, due to his capital case, he "was not going anywhere." (D.I. 2 at ¶ 3)

[7]A prison disturbance may be a riot or a lesser disruption; for example "whenever guards use force to keep order." *See Hudson*, 503 U.S. at 6-7.

7

officials are accorded substantial latitude where prison security and the safety of prisoners and officers is at stake. The infliction of pain in the course of a prison security measure does not amount to a constitutional violation simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense. *Whitley*, 475 U.S. at 219. Therefore, for a pretrial detainee to state an excessive force claim against a prison official, he must adduce evidence that the force used was applied "maliciously and sadistically to cause harm" and not "in a good-faith effort to maintain or restore discipline." *Hudson*, 503 U.S. at 6.

Liberally construing the Complaint, the Court finds that Plaintiff has adequately alleged an excessive force/failure to protect claim against Harris, Smith, and Searles with regard to the May 21, 2010 incident. (D.I. 2 at ¶ 3) The claims against the other individuals Plaintiff spoke to after-the fact do not implicate the requisite personal involvement on their behalf.

The May 22, 2010 incident does not rise to the level of a constitutional violation. Although it is not required that Plaintiff show he suffered more than a *de minimis* injury to maintain his excessive force claim, *see Wilkins v. Gaddy*, __U.S.__, 130 S.Ct. 1175, 1179-1180 (2010) (noting that notion of significant injury as threshold requirement for stating excessive force claim was rejected in *Hudson*, 503 U.S. at 7), the "absence of [a] serious injury" nevertheless remains relevant in an Eighth Amendment inquiry, *Wilkins*, 130 S.Ct. at 1179-80 (stating that "[a]n inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim") (internal quotation marks omitted). Here, Plaintiff does not allege any injury resulted from the May 22, 2010 occurrence. He merely indicates that Williams made contact with him. Accordingly, the Court will dismiss the May 22,

2010 excessive force claim as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).[8]

### E. Medical Needs

Plaintiff alleges that following the May 21, 2010 incident, he was denied medical care by Harris and then by Defendants Sgt. Dimpsey ("Dimpsey"), Medine, and the Charge Nurse ("Nurse"). (D.I. 2 at ¶¶ 3, 4) The Nurse who examined Plaintiff did not see the bleeding condition of which he complained and scheduled Plaintiff to see the physician. On May 28, 2010, Plaintiff was examined by a physician and underwent testing. (*Id.* at ¶ 10)

Plaintiff further alleges that for four decades he has had a foot and thigh condition resulting from burns that require ointment. He filled out several sick call slips and was seen by Defendant Nurse Cindy ("Cindy") in late May, June, July, August, and September 2010. The ointment he requires can be purchased from the commissary. Plaintiff alleges that he is indigent, and, therefore, he must be provided with the ointment. He complains that he received "wrong medical care" and needs to see a foot specialist. Plaintiff wrote to Warden Morgan, and Morgan responded. (D.I. 2 at ¶ 11)

---

[8]Plaintiff's claims of verbal threats are not constitutional violations. (D.I. 2 at ¶¶ 3, 5) Plaintiff also alleges that he was threatened by Defendant C/O Parrelle on September 9, 2010. (*Id.* at ¶ 16) Verbal abuse of a prisoner, even of the lewd variety, is not actionable under 42 U.S.C. § 1983. *See Aleem-X v. Westcott* 347 F. App'x 731 (3d Cir. Oct. 9, 2009) (not published); *see also Murray v. Woodburn*, 809 F.Supp. 383, 384 (E.D. Pa. 1993); *McBride v. Deer*, 240 F.3d 1287, 1291 (10th Cir. 2001) (taunts and threats are not Eighth Amendment violation); *Prisoners' Legal Ass'n v. Roberson*, 822 F. Supp. 185, 189 (D.N.J. 1993) (verbal harassment does not violate inmate's constitutional rights). Similarly, allegations that prison personnel have used threatening language and gestures are not cognizable claims under § 1983. *See Collins v. Cundy*, 603 F.2d 825 (10th Cir. 1979) (explaining defendant laughed at prisoner and threatened to hang him). Accordingly, the Court will dismiss all claims of verbal threats/abuse as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

A pretrial detainee's claim challenging the conditions of confinement in a state detention facility is analyzed under the Due Process Clause of the Fourteenth Amendment. *See Hubbard v. Taylor*, 399 F.3d 150, 157-58 (3d Cir. 2005). Courts have concluded that the Fourteenth Amendment affords pretrial detainees protections that are "at least as great as the Eighth Amendment protections afforded to a convicted prisoner." *Natale v. Camden County Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003) (internal quotation marks omitted). Hence, when assessing medical claims by pretrial detainees, courts may apply the deliberate indifference standard established under the Eighth Amendment, but must view the inquiry in the context of the *Bell v. Wolfish* standard, which applies Fourteenth Amendment due process principles and not the cruel and unusual punishment standard to pretrial detainees. *See Hubbard*, 399 F.3d at 165-66. The deliberate indifference standard requires a finding of a serious medical need and acts or omissions by prison officials that indicate deliberate indifference to that need. *See Natale*, 318 F.3d at 582. A prison official may manifest deliberate indifference by "intentionally denying or delaying access to medical care." *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976).

"[A] prisoner has no right to choose a specific form of medical treatment," so long as the treatment provided is reasonable. *Harrison v. Barkley*, 219 F.3d 132, 138-40 (2d Cir. 2000). An inmate's claims against members of a prison medical department are not viable under § 1983 when the inmate receives continuing care, but believes that more should be done by way of diagnosis and treatment, or when the prisoner maintains that options available to medical personnel were not pursued on the inmate's behalf. *See Estelle*, 429 U.S. at 107. Moreover, allegations of medical malpractice are not sufficient to establish a Constitutional violation. *See*

10

*White v. Napoleon*, 897 F.2d 103, 108-09 (3d Cir. 1990); *see also Daniels v. Williams*, 474 U.S. 327, 332-34 (1986) (stating negligence is not compensable as Constitutional deprivation). Finally, "mere disagreement as to the proper medical treatment" is insufficient to state a constitutional violation. *Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004).

Even when reading the Complaint in the light most favorable to Plaintiff, he fails to state an actionable constitutional claim against Defendants for deliberate indifference to a serious medical need. Rather, the Complaint alleges that Plaintiff received treatment for his medical conditions, albeit treatment that was not to Plaintiff's liking.

With regard to Warden Morgan, prison administrators are not deliberately indifferent "simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor." *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993). The Third Circuit clarified that "[i]f a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Spruill*, 372 F.3d at 236. "[A]bsent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." *Id.* It is evident from Plaintiff's allegations that he received medical treatment. His communication with Warden Morgan leaves no doubt that he was receiving medical care, even though Plaintiff deems it unsatisfactory.

The allegations fall far short of alleging a violation of Plaintiff's constitutional rights with regard to his medical needs. Therefore, the Court will dismiss the medical needs claims as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

### F. Grievances

Plaintiff alleges that on May 26, 2010, he was interviewed by Defendant Capt. Berggur ("Berggur"), who handled grievances Plaintiff had filed against other correctional officers. (D.I. 2 at ¶ 6) He alleges that during an interview with Internal Affairs held in Berggur's office on June 3, 2010, he was told that the grievances he wrote about Williams and submitted following the May 21, 2010 macing incident were missing or disappeared. Plaintiff was told that he may, or may not, see them again. (*Id.* at ¶ 8) Finally, he alleges that he did not receive a response to his grievance regarding missing legal materials. (*Id.* at ¶ 14)

To the extent that Plaintiff bases his claims upon his dissatisfaction with the grievance procedure or denial of his grievances, his claims fail because an inmate does not have a constitutionally protected right to a grievance procedure. *See Caldwell v. Beard*, 324 F. App'x 186, 189 (3d Cir. Apr. 27, 2009) (not published) (citing *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991)). Anyway, it is clear from the allegations that Plaintiff was allowed to submit grievances. Plaintiff cannot maintain a constitutional claim based upon comments made to him, or his perception that his grievances were not properly processed or investigated, or that the grievance process is inadequate. Therefore, the Court will dismiss the grievance claims as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

### G. Transfer

In early June 2010, Plaintiff spoke to Berggur who told him that Warden Morgan was not pleased with Plaintiff's submissions of complaints about correctional officers. Plaintiff asked Berggur why he had not been transferred to the VCC and was told that a transfer was not required merely because Plaintiff's attorney had requested one. Plaintiff advised Berggur that

Warden Morgan had told Plaintiff's attorney that Plaintiff was being transferred to the VCC because Plaintiff's life was in jeopardy. (D.I. 2 at ¶ 9)

Plaintiff's claim fails to the extent he alleges that Defendants are required to transfer him to the VCC. The Delaware Supreme Court has recognized that prison officials have discretion to house inmates at the facilities the officials choose. *See Walls v. Taylor*, 856 A.2d 1067, 2004 WL 906550 (Del. 2004) (table) (citing *Brathwaite v. State*, No. 169, 2003 (Del. Dec. 29, 2003)). Furthermore, the United States Supreme Court has held that an inmate has no due process right to be incarcerated in a particular institution, whether it be inside the state of conviction or outside that state. *See Olim v. Wakinekona*, 461 U.S. 238, 251(1983).

Based upon the foregoing, Plaintiff's right to transfer claim will be dismissed as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

### H. Due Process

Plaintiff alleges that he was classified for placement in "the hole" by order of Warden Morgan even though he had no infractions or assaultive behavior. After writing to Defendants Deputy Warden Emmett ("Emmett") and Major Parker ("Parker"), Plaintiff was told by Parker that he would be housed there for two weeks. Later, Plaintiff was told he was housed in "the hole" because of his capital case. (D.I. 2 at ¶¶ 1, 2, 3)

Plaintiff further alleges that on August 3, 2010, Defendant Lt. A. Pedrick ("Pedrick") conspired with Warden Morgan and Parker to find Plaintiff guilty of an infraction (apparently related to the macing incident) without conducting an investigation. When Plaintiff asked Pedrick if he was going to do anything about the incident, Pedrick replied, "I find you guilty."

When Plaintiff stated that he intended to appeal, Pedrick responded that he denied the appeal and still finds Plaintiff guilty. (D.I. 2 at ¶ 12)

Pretrial detainees have a liberty interest in being free from punishment prior to conviction under the Due Process Clause. *See Bell v. Wolfish*, 441 U.S. 520, 535-36 (1979). "Absent a showing of an expressed intent to punish on the part of detention facility officials, that determination [i.e., whether there is a violation] generally will turn on whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it]." *Id.* at 538. Therefore, "if a restriction or condition is not reasonably related to a legitimate goal – if it is arbitrary or purposeless – a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees." *Id.* at 539. In the absence of substantial evidence in the record to indicate that the officials have exaggerated their response, courts should ordinarily defer to the expert judgment of corrections officials. *See id.* at 540 n.23.

Assessing allegations of unconstitutional punishment typically includes both objective and subjective components. *See Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007). The objective component requires an inquiry into whether "the deprivation [was] sufficiently serious" and the subjective component asks whether "the officials act[ed] with a sufficiently culpable state of mind[.]" *Id.*

With respect to the procedural due process claims, the procedures required by *Wolff v. McDonnell*, 418 U.S. (1974), apply if the restraint on liberty is imposed for disciplinary reasons; if, instead, the restraint is for "administrative" purposes, the procedures outlined in *Hewitt v.*

14

*Helms*, 459 U.S. 460 (1983), are all that is required. *See Stevenson*, 495 F.3d at 70. In *Wolff*, 418 U.S. at 556, the Supreme Court held that prisoners must be accorded due process before prison authorities may deprive them of state created liberty interests. A prison disciplinary hearing satisfies the Due Process Clause if the inmate is provided with: (1) written notice of the charges and not less than 24 hours to marshal the facts and prepare a defense for an appearance at the disciplinary hearing; (2) a written statement by the fact finder as to the evidence relied on and the reasons for the disciplinary action; and (3) an opportunity "to call witnesses and present documentary evidence in his defense when to do so will not be unduly hazardous to institutional safety or correctional goals." *Id.* at 563-71. Under *Hewitt*, pretrial detainees who are transferred into more restrictive housing for administrative purposes must be provided an explanation of the reason for their transfer as well as an opportunity to respond. *See Stevenson*, 495 F.3d at 70.

Liberally construing the Complaint, Plaintiff has adequately alleged due process claims against Warden Morgan and Parker with regard to his alleged placement in "the hole" due to his being charged with a capital offense, and against Pedrick with regard to his actions during the August 3, 2010 disciplinary hearing. (D.I. 2 at ¶¶ 1-3, 12) To the extent Plaintiff alleges conspiracy, the claim fails, as Plaintiff's allegations consist of legal conclusions without supporting facts and fail to meeting the pleading requirements of *Iqbal* and *Twombly*.

For the above reasons, the conspiracy claim will be dismissed as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1). Plaintiff may proceed with his due process claims as discussed hereinabove.

## I. Access to the Courts

Plaintiff alleges that he was told by Berggur that the only way he may have access to the law library is if he is a sentenced inmate. (D.I. 2 at ¶ 9) He further alleges that legal materials were taken from his cell on August 25, 2010 and returned to him on September 22, 2010, but several documents were missing. (D.I. 2 at ¶ 13) Finally, Plaintiff alleges that his legal mail has been opened before he receives it and is resealed with Scotch tape. (D.I. 2 at ¶ 15)

Prisoners must be allowed "adequate, effective and meaningful" access to the courts. *Bounds v. Smith*, 430 U.S. 817, 822 (1977) (holding that prisons must give inmates access to law libraries or direct legal assistance). "Many courts have found a cause of action for violation of the right of access stated where it was alleged that prison officials confiscated and/or destroyed legal materials." *Zilich v. Lucht*, 981 F.2d 694, 695 (3d Cir. 1992). However, a violation of the First Amendment right of access to the courts is only established where a litigant shows that he was actually injured by the alleged denial of access. The actual injury requirement is a constitutional prerequisite to suit. *See Lewis v. Casey*, 518 U.S. 343, 351 (1996); *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (explaining that constitutional right of access is "ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court"). An actual injury is shown only where a nonfrivolous, arguable claim is lost. *See Christopher*, 536 U.S. at 415.

The record does not reflect a violation of Plaintiff's right to access the courts or actual injury as a result of any alleged denial. The Court takes judicial notice that Plaintiff is represented by appointed counsel in his criminal case. As to his civil cases, it is evident from his numerous filings, in this and other cases he has filed in this Court, that he has been able to

prosecute his civil lawsuits. Indeed, Plaintiff has filed eleven cases in this Court since August 2010.

For the above reasons, the Court will dismiss the access to the court claims as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

## V. **CONCLUSION**

For the reasons discussed, Plaintiff may proceed with: (1) the excessive force claim found at paragraph three of the Complaint against Searles, Harris, and Smith; and (2) the due process claims found at paragraphs one, two, three, and twelve of the Complaint against Warden Morgan, Parker, and Pedrick. The Court will dismiss the remaining Defendants and claims as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

An appropriate Order follows.